USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/8/21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X

IRIVING H. PICARD,

        Plaintiff,

  -against-

SAGE REALTY, et al.,

        Defendants.

------------------------------------- X

IRVING H. PICARD,

        Plaintiff,

  -against-

SAGE ASSOCIATES, et al.,

        Defendants.

------------------------------------- X

No. 20 Civ. 10109 (JFK)

**OPINION & ORDER**

No. 20 Civ. 10057 (JFK)

**OPINION & ORDER**

**JOHN F. KEENAN, United States District Judge:**

    A bench trial in this action is set to begin on January 18, 2022.  Before the Court is the Plaintiff Irving H. Picard's (the "Trustee") "Motion in limine Number 1," seeking to admit prior trial testimony of former Bernard L. Madoff Investment Securities LLC ("BLMIS") employee Frank DiPascali ("DiPascali"). (Notice of Motions in Limine, ECF No. 49; Mem. of Law in Support of Motion in Limine Number 1, ECF No. 50.)  The individual and entity Defendants, Sage Associates, Sage Realty, Malcolm Sage, Martin Sage, and Ann Sage Passer (the "Defendants") oppose the

1

motion.   (Mem. of Law in Opp'n, ECF No. 66.)   For the reasons

set forth below, the Trustee's motion is GRANTED.[1]

## I.   Background

The Court assumes familiarity with the facts of this case,

which are set out in greater detail in Judge Alison J. Nathan's

May 18, 2021, Opinion and Order granting the Defendants' motion

to withdraw the bankruptcy reference.   See Picard v. Sage

Realty, No. 20 Civ. 10057 (AJN), 2021 WL 1987994, at *1

(S.D.N.Y. May 18, 2021).   The Court summarizes here the facts

that are relevant to the consideration of the pending motion in

limine.

Following Bernie Madoff's arrest for securities fraud on

December 11, 2008, BLMIS was placed into liquidation proceedings

pursuant to the Securities Investor Protection Act ("SIPA").

See SEC v. Madoff, No. 08 Civ. 10791 (LLS) (S.D.N.Y. Dec. 15,

2008).   Irving H. Picard was appointed as a trustee for the SIPA

liquidation and, pursuant to the SIPA, removed the proceedings

to the United States Bankruptcy Court for the Southern District

of New York.   Shortly thereafter, the Trustee commenced

adversary proceedings against former BLMIS customers who had

received funds from BLMIS in excess of their principal

---

[1] The Court will rule by separate order on the Trustee's second motion
in limine (ECF No. 51) and the Defendants' sole motion in limine (ECF
No. 42).

investment.   (Mem. of Law in Support of Motion in Limine Number

1, ECF No. 50., at 2.)

   As a part of this effort, the Trustee brought these two

consolidated actions to avoid and recover allegedly fraudulent

transfers made by BLMIS to the Defendants in the two years prior

to BLMIS's filing for bankruptcy.   (Id.)   Pursuant to Sections

548 and 550 of the Bankruptcy Code, the Trustee seeks to avoid

and recover a $13,510,000 transfer to Defendant Sage Associates

and a $3,370,000 transfer to Defendant Sage Realty, and to hold

the individual defendants, Malcolm Sage, Martin Sage, and Ann

Sage Passer, jointly and severally liable for those transfers in

their alleged capacities as partners or joint venturers.   (Id.).

   As relevant here, on December 1, 2020, the Defendants filed

a motion to withdraw the bankruptcy reference in both

proceedings to the District Court.   See Sage Realty, 2021 WL

1987994, at *2.   In a May 18, 2021, Opinion and Order, Judge

Nathan granted the Defendants' motion and ordered the parties

"to submit a joint letter by June 14, 2021 updating the Court on

the status of discovery and providing a proposal for next

steps."   Id. at *7.   On June 14, 2021, the parties submitted a

joint letter to Judge Nathan requesting that the consolidated

cases "proceed to a bench trial . . . if acceptable to the

Court."   (ECF No. 26.)   Judge Nathan subsequently entered a pre-

trial scheduling order and set a trial date for January 18,

2022.  (ECF No. 29.)  On November 2, 2021, this action was transferred to this Court.  (See Notice of Case Reassignment, dated Nov. 2, 2021.)

In accordance with Judge Nathan's pre-trial scheduling order, the parties filed their Proposed Findings of Fact and Conclusions of Law and motions in limine on November 1, 2021. The Trustee filed two separate motions in limine.  (ECF Nos. 50, 51.)  In his "Motion in Limine Number 1," the Trustee seeks to admit certain testimony that Frank DiPascali, since deceased, gave during the criminal trial, United States v. Bonventre, No. 10 Cr. 228 (LTS) (S.D.N.Y.), of five former BLMIS employees. (Mem. of Law in Support of Motion in Limine Number 1 at 3.) Specifically, the Trustee seeks to admit DiPascali's testimony relating to: "(1) BLMIS operations and cash management; (2) the various investment 'strategies' that Madoff claimed to employ; (3) BLMIS's use of backdated trading information; and (4) BLMIS's failure to purchase or sell securities for customer accounts in the IA Business."  (Id.)

The Trustee argues that the testimony is admissible as former testimony under Federal Rule of Evidence 804(b)(1) or the residual exception to hearsay rule contained in Federal Rule of Evidence 807.  (Id. at 8, 13.)  In response, the Defendants argue that the proffered testimony is hearsay and inadmissible under either Rule 804(b)(1) or 807.  (Mem. of Law in Opp'n, ECF

No. 66.)   The Defendants also argue that the testimony is

unfairly prejudicial and should be excluded under Federal Rule

of Evidence 403.   (Id. at 15.)

## II.   Analysis

"The purpose of a motion in limine is to allow the trial

court to rule in advance on the admissibility and relevance of

certain forecasted evidence."   United States v. Chan, 184 F.

Supp. 2d 337, 340 (S.D.N.Y. 2002) (citing Luce v. United States,

469 U.S. 38, 41 n.4 (1984)).   A district court "should exclude

evidence on a motion in limine only when the evidence is clearly

inadmissible on all potential grounds."   United States v.

Ozsusamlar, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006)

(citations omitted)).

Under Federal Rule of Evidence 807, as amended in 2019, a

hearsay statement may be admitted in evidence notwithstanding

the general rule against hearsay if the statement "is supported

by sufficient guarantees of trustworthiness" and "is more

probative on the point for which it is offered than any other

evidence that the proponent can obtain through reasonable

efforts."   Fed. R. Evid. 807.   The Second Circuit has recognized

that hearsay evidence admitted under Rule 807 "must fulfill five

requirements: trustworthiness, materiality, probative

importance, [and] the interests of justice and notice."   Parsons

v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991).

"In examining whether a statement meets these criteria, the Second Circuit has noted that 'Congress intended that the residual hearsay exceptions be used very rarely, and only in exceptional circumstances.'" United States v. Mejia, 948 F. Supp. 2d 311, 316 (S.D.N.Y. 2013) (quoting Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991)).  Courts in this Circuit have recognized, however, that although "[t]he residual exception should be invoked sparingly," Robinson v. Shapiro, 646 F.2d 734, 742 (2d Cir. 1981), "the rules on hearsay should be read to exclude unreliable hearsay but to admit reliable hearsay. . . . [S]uch 'reliable hearsay' has, of course, the effect of promoting the truth-seeking function of a . . . trial and, therefore, ought to be presented to the finders of facts." United States v. Carneglia, 256 F.R.D. 384, 392 (E.D.N.Y. 2009); see also Davis v. City of New York, 959 F. Supp. 2d 427, 434 (S.D.N.Y. 2013) (same).

In their opposition to the instant motion, the Defendants argue that DiPascali's prior trial testimony is inadmissible under Rule 807 because it is insufficiently trustworthy and is not more probative on the point for which it is offered than other evidence the Trustee could have reasonably obtained. (Mem. of Law in Opp'n at 10—14.)  The Defendants specifically argue that DiPascali's testimony regarding the scope and duration of Madoff's fraud is inconsistent with portions of his

6

plea allocution and that the testimony of other former BLMIS

employees would be far more probative on those points.  The

Court disagrees.[2]

Under Rule 807, "the focus for trustworthiness is on

circumstantial guarantees surrounding the making of the

statement itself, as well as any independent evidence

corroborating the statement."  Fed. R. Evid. 2019 Advisory

Committee Notes.  When evaluating the trustworthiness of a

hearsay statement, the Court considers "to what extent it

minimizes the 'four classic hearsay dangers,' namely,

insincerity, faulty perception, faulty memory, and faulty

narration."  Jacobson v. Deutsche Bank, A.G., 206 F. Supp. 2d

590, 595 (S.D.N.Y. 2002), aff'd, 59 F. Appx. 430 (2d Cir. 2003)

(quoting Schering Corp. v. Pfizer, Inc., 189 F.3d 218, 232-33

(2d Cir. 1999)).

Here, DiPascali's prior testimony identified in the Brown

Declaration, Exhibit 1, is supported by sufficient guarantees of

trustworthiness to satisfy the requirements of Rule 807.  The

Court recognizes that at the time of his testimony, DiPascali

was waiting to be sentenced in his own criminal case and likely

---

[2] Because the Court concludes that the proffered testimony is
admissible under the residual exception of Rule 807, the Court does
not address the applicability of Rule 804(b)(1).  See Fed. R. Evid.
2019 Advisory Committee Notes (noting that "[a] court is not required
to make a finding that no other hearsay exception is applicable"
before considering the application of Rule 807).

hoped that his cooperation with the Government would result in a favorable sentencing recommendation.  Nevertheless, DiPascali's testimony was given under oath in open court, and he was subject to extensive cross examination.  Over the course of sixteen days, DiPascali was cross examined by each of the five criminal defendants and testified in Bonventre's case-in-chief, during which he was cross-examined by the government.  DiPascali never recanted his testimony, and his unavailability is a consequence of his death, not a desire to avoid testifying again in these consolidated cases.

Furthermore, contrary to the Defendants' assertions, DiPascali's trial testimony is not inconsistent with his plea allocution.  During the Bonventre trial, DiPascali testified that "fake trading" had been taking place at BLMIS "for as long as [he could] remember" and that he overheard Annette Bongiorno, one of the five co-defendants, discussing "fake" trades with various clients in "the 1970's."  (Exhibit 1 to Brown Decl. (Excerpts of DiPascali Trial Testimony) at 4517:2-4518:2; 4592:1-17.)  During his plea allocution, DiPascali agreed with the Government's statement that had he gone to trial, the Government would have proven that "beginning at least as early as the 1980s, a conspiracy existed between [him], Mr. Madoff, and others, to commit securities fraud, investment fraud," and other felonies.  (Exhibit D to Kratenstein Decl. (DiPascali Plea

Allocution) at 55:14-56:5; 59:14-16 (emphasis added).)

DiPascali also stated during his plea allocution that Madoff's

fraud "began [f]rom at least the early 1990s."  (Id. at 46:9

(emphasis added).)  The slight discrepancies in DiPascali's

description of when Madoff's fraud began do not undermine the

trustworthiness of his prior trial testimony.  Furthermore, as

both the Bankruptcy Court and Judge John G. Koeltl have

recognized in separate cases involving the Trustee and the

admission of DiPascali's testimony, evidence compiled by the

Trustee's expert, Bruce Dubinsky, corroborates DiPascali's

testimony regarding the duration of Madoff's fraud.  See Sec.

Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 528 F.

Supp. 3d 219, 233 (S.D.N.Y. 2021); Sec. Inv. Prot. Corp. v.

Bernard L. Madoff Inv. Sec. LLC, 610 B.R. 197, 229 (Bankr.

S.D.N.Y. 2019).  Accordingly, the Court concludes that the

DiPascali's testimony is sufficiently trustworthy to be admitted

under Rule 807.

The Court also concludes that the Trustee has satisfied

Rule 807's probative importance requirement.  The Trustee seeks

to admit DiPascali's testimony in order to establish, in part,

that the IA Business did not purchase securities on behalf of

BLMIS clients.  As DiPascali's testimony demonstrates, he was

directly responsible for implementing the fraudulent split-

strike conversion strategy and had extensive exposure to the

fraudulent investment strategies that were used in other accounts, such as the options and convertible arbitrage strategies. (Exhibit 1 to Brown Decl. (Excerpts of DiPascali Trial Testimony) at 4801:3-4806:3.)  For example, DiPascali testified that he observed other BLMIS employees create fictitious convertible arbitrage trades and report those trades on customer account statements. (Id. at 4590:13-4596:10.) DiPascali also testified that he was directly responsible for generating fraudulent customer statements for IA Business clients.  (Id. at 4657:2-4657:17; 4801:3-4806:3.)  As DiPascali's testimony demonstrates, his account of his thirty-year tenure at the heart of the IA Business is more probative on the point for which it is offered—namely the scope and duration of Madoff's fraud—than other evidence the Trustee could have obtained through reasonable efforts.  Accordingly, the Court concludes that the proffered trial testimony of DiPascali is admissible under the residual exception of Rule 807.

Finally, the Court rejects the Defendants' argument that DiPascali's testimony should be excluded under Rule 403 because its probative value is outweighed by the danger of unfair prejudice.  As noted previously, this case will be tried to the bench.  In the context of a bench trial, the possibility of unfair prejudice is remote.  See De La Rosa v. 650 Sixth Ave Trevi LLC, No. 13 Civ. 7997 (VEC), 2019 WL 6245408, at *4

(S.D.N.Y. Nov. 22, 2019) (noting that the Rule 403 "balancing test strongly favors admissibility in a bench trial"); see also BIC Corp. v. Far Eastern Source Corp., 23 F. App'x. 36, 39 (2d Cir. 2001) ("admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis").  The Court, therefore, concludes that Rule 403 does not preclude the admission of the proffered testimony.

For the foregoing reasons, the Trustee's Motion in limine Number 1 (ECF No. 50) is GRANTED.

**SO ORDERED.**

Dated:    New York, New York
          December 8, 2021

John F. Keenan
United States District Judge

11