USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
IRIVING H. PICARD,                 :
                                   :
          Plaintiff,               :
                                   :
    -against-                      :   No. 20 Civ. 10109 (JFK)
                                   :
SAGE REALTY, et al.,               :       OPINION & ORDER
                                   :
          Defendants.              :
                                   :
---------------------------------- X
IRVING H. PICARD,                  :
                                   :
          Plaintiff,               :
                                   :
    -against-                      :   No. 20 Civ. 10057 (JFK)
                                   :
SAGE ASSOCIATES, et al.,           :       OPINION & ORDER
                                   :
          Defendants.              :
                                   :
---------------------------------- X

**JOHN F. KEENAN**, United States District Judge:

    A bench trial in this action is set to begin on January 19, 2022. Before the Court is the Defendants' motion in limine seeking to preclude Plaintiff Irving H. Picard (the "Trustee") from introducing in evidence an FBI Interview Report (the "302 Report") summarizing statements made by Bernie Madoff on December 16, 2008, during a proffer session with the Government following his arrest. (Notice of Motion in Limine, ECF No. 41; Mem. of L. in Support, ECF No. 42.) The instant motion in limine also requests that the Court preclude the Trustee from admitting into evidence testimony given by FBI Special Agent

1

Theodore Cacioppi regarding the 302 Report.  (Mem. of L. in Support at 1.)  The Trustee opposes the motion on the grounds that both the 302 Report and Madoff's statements contained within it are admissible under certain exceptions to the rule against hearsay.  (Mem. of L. in Opp'n, ECF No. 69.)  For the reasons set forth below, the Defendants' motion is DENIED.

I.  **Background**

The Court assumes familiarity with the facts of this case, which are set out in greater detail in Judge Alison J. Nathan's May 18, 2021, Opinion and Order granting the Defendants' motion to withdraw the bankruptcy reference.  See Picard v. Sage Realty, No. 20 Civ. 10057 (AJN), 2021 WL 1987994, at *1 (S.D.N.Y. May 18, 2021).  The Court summarizes here the facts relevant to the consideration of the pending motion in limine.

Following Bernie Madoff's arrest for securities fraud on December 11, 2008, Bernard L. Madoff Investment Securities LLC ("BLMIS") was placed into liquidation proceedings pursuant to the Securities Investor Protection Act ("SIPA").  See SEC v. Madoff, No. 08 Civ. 10791 (LLS) (S.D.N.Y. Dec. 15, 2008).  Irving H. Picard was appointed as a trustee for the SIPA liquidation and, in accordance with the SIPA, removed the proceedings to the United States Bankruptcy Court for the Southern District of New York.  During a subsequent investigation of BLMIS, the Trustee found that the overwhelming

majority of BLMIS's purported "profits" were fictitious and the product of a "traditional Ponzi scheme."  See Sage Realty, 2021 WL 1987994, at *1.

Beginning in 2010, the Trustee commenced adversary proceedings against former BLMIS customers who had received funds from BLMIS in excess of their principal investment.  See id. at *2.  As a part of this effort, the Trustee brought the instant consolidated actions to avoid and recover allegedly fraudulent transfers made by BLMIS to the Defendants in the two years prior to BLMIS's filing for bankruptcy.  Id.  Pursuant to Sections 548 and 550 of the Bankruptcy Code, the Trustee seeks to avoid and recover a $13,510,000 transfer to Defendant Sage Associates and a $3,370,000 transfer to Defendant Sage Realty, and to hold the individual defendants, Malcolm Sage, Martin Sage, and Ann Sage Passer, jointly and severally liable for those transfers in their alleged capacities as partners or joint venturers.  Id.

In response to the Trustee's claims, the Defendants argue that they are entitled to "credits of principal" for the securities positions reported on their BLMIS customer statements because, unlike the majority of BLMIS clients, they directed and authorized BLMIS to buy and sell specific securities and to hold those securities in their accounts.  (Mem. of L. in Opp'n at 2.) According to the Defendants, because "the returns in the Sage

Associates accounts mirrored the returns" of the directed trades, they are entitled to retain the purported profits under the SIPA. Sage Realty, 2021 WL 1987994, at *4.

In November 2017, the Defendant's took Madoff's deposition. See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. AP 08-01789 (SMB), 2019 WL 654293, at *1 (Bankr. S.D.N.Y. Feb. 15, 2019). During the deposition, Madoff testified that the majority of the trading conducted in the Defendants' accounts was real and that his fraud was limited to: (i) "split strike"[1] trades starting in or around 1992; and (ii) back-dating trades on behalf of the "four families" or "big four" accounts (which did not include the Defendants' accounts). (Mem. of L. in Opp'n at 2.) Madoff also testified at his deposition that BLMIS purchased securities for Defendants' accounts starting in the early 1980s. (Id.) The Defendants intend to offer this testimony at trial in support of their claim that they are entitled to credit for the securities positions reported on their BLMIS customer statements. (Id.)

---

[1] "This was a strategy where BLMIS purportedly 'invested customer funds in a subset, or basket, of Standard & Poor's 100 Index . . . common stocks, and maximized value by purchasing before, and selling after, price increases.' . . . This 'strategy' was never actually used, however, as no securities were ever purchased for these customers, and in fact it would have been impossible to implement, according to subsequent investigations." Sage Realty, 2021 WL 1987994, at *3 (citations omitted) (quoting In re Bernard L. Madoff Inv. Sec. LLC, 424 B.R. 122, 132-33 (Bankr. S.D.N.Y. 2010), aff'd, 654 F.3d 229 (2d Cir. 2011).

In response, the Trustee plans to admit FBI Special Agent Theodore Cacioppi's December 18, 2008, 302 Report,[2] which memorializes his notes from a December 16, 2008, proffer session with Madoff at the U.S. Attorney's Office for the Southern District of New York.  (Mem. of L. in Opp'n at 2.)  According to the 302 Report, Madoff stated during the proffer session that "he began to engage in fraud as to the entire retail business [and] stopped engaging in any actual trading" soon after the retail business began in the 1960s.  (Kratenstein Decl., Ex. B (302 Report) at 3, 7; ECF No. 43-2.)  The 302 Report further indicates that Madoff stated that his fraudulent scheme "entailed [him] taking in funds from investors, holding those funds, and paying them out to investors seeking redemptions.  It was essentially a Ponzi scheme."  (Id. at 4.)  Regarding the duration and scope of the fraud, the 302 Report indicates that Madoff admitted that he "began engaging in fraud in earnest in the 1970s.  The 1980s saw a large expansion in the retail (i.e. fraudulent) portion of the business.  As there was no actual trading . . . the only records of the purported trades are the paper confirmations."  (Id.)

---

[2] "An FBI 302 is a form routinely used to memorialize an FBI interview of a witness." United States v. Nathan, 816 F.2d 230, 232 n. 1 (6th Cir. 1987).

Of particular relevance here, the Trustee was only able to secure a heavily redacted copy of Special Agent Cacioppi's 302 Report prior to Madoff's deposition.  (Mem. of L. in Opp'n at 4.)  The Trustee marked the redacted 302 Report as an exhibit during the deposition and questioned Madoff about the proffer session.  (Id.)  In response, Madoff testified that he recalled making some of the statements contained in the redacted 302 Report but claimed that he did not state during the proffer that his fraud began in the 1960s.  (Id.)  Madoff instead claimed that his fraud began in the 1990s with the split-strike conversion strategy.  (Id.)

On February 15, 2019, the Government finally provided the Trustee with a largely unredacted copy of the 302 Report.  (Id.) The Government also made Special Agent Cacioppi available for a deposition but only in response to written questions under Federal Rule of Civil Procedure 31.[3]  (Id.)  During the deposition, Special Agent Cacioppi described the structure and process of a proffer session and stated that FBI policy requires agents to prepare a report of the interview based on their notes.  (Id. at 5.)  Special Agent Cacioppi also testified that during the proffer, Madoff "described for us his version of

---

[3] The parties have agreed that in the event the court denies the instant motion in limine, the Trustee may submit Special Agent Cacioppi's deposition testimony in lieu of a direct examination declaration and live cross-examination.  (Mem. of L. in Support at n.3; Mem. of L. in Opp'n at n.2.)

events as to the formation and execution of his Ponzi scheme" and "stated that [the fraud] began initially in the '60s but [began] more formally and in earnest in the '70s." (Kratenstein Decl., Ex. C (Cacioppi Dep. Tr.) at 28:12-29:12; ECF No. 43-3.)

**I. Applicable Law**

"The purpose of a motion in limine is to allow the trial court to rule in advance on the admissibility and relevance of certain forecasted evidence." United States v. Chan, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citing Luce v. United States, 469 U.S. 38, 41 n.4 (1984)). A district court "should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (citations omitted)).

Federal Rule of Evidence 805 permits the introduction of hearsay contained within hearsay so long as "each level of hearsay is covered by an exception to the hearsay rule." Agriculture Ins. Co., Inc. v. Ace Hardware Corp., 214 F.Supp.2d 413, 416 (S.D.N.Y. 2002). This rule applies to third-party statements contained in police reports. See Tokio Marine Mgmt., Inc. v. M/V Zim Tokyo, No. 91 Civ. 0063 (PKL), 1993 WL 322869, at *9 (S.D.N.Y. Aug. 17, 1993) ("[T]here must also be an independent evidentiary basis for admitting hearsay statements by other individuals contained within the police report").

## II. Analysis

As both the Defendants and Trustee acknowledge, the 302 Report contains two levels of hearsay. The first level is the report itself, which the Trustee contends is admissible under the business record exception of Fed. R. Evid. 803(6) or the public record exception of Fed. R. Evid. 803(8). (Mem. of L. in Opp'n 9–11.) The second level consists of Madoff's proffer statements, as memorialized in the 302 Report by Special Agent Cacioppi, which the Trustee argues are independently admissible as statements against interest under Fed. R. Evid. 804(b)(3)(A). (Id. at 6–8.) In support of the instant motion in limine, the Defendants argue that "although the 302 [Report] may be a business record or public record . . . the statements attributed to Madoff in the 302 [Report] do not fall under a hearsay exception." (Reply Mem. of L. at 2; ECF No. 71.) The Court disagrees and concludes that Madoff's proffer statements memorialized in the 302 Report and Special Agent Cacioppi's testimony are admissible at trial.

The Defendants correctly concede in their Reply Memorandum of Law (Reply Mem. of L. at 2.) that FBI 302 reports may be admissible as public record under Fed. R. Evid. 803(8). See Tokio Marine Mgmt., Inc., 1993 WL 322869, at *9 ("It is well settled that [a] police report itself . . . is admissible as an exception to the hearsay rule [] as a business record under Fed.

R. Evid. 803(6) or a public record under Fed. R. Evid. 803(8)"); see also Spanierman Gallery, Profit Sharing Plan v. Merritt, No. 00 Civ. 5712 (LTS) (THK), 2003 WL 22909160, at *5 (S.D.N.Y. Dec. 9, 2003) ("[a]s is true for police reports, FBI reports are admissible in evidence as either business records . . . or public records" (citations omitted)); Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 805 F.2d 49, 54 (2d Cir. 1986) (concluding that FBI reports are admissible under public records hearsay exception).

Under Fed. R. Evid. 803(8), a public record may be admitted for its truth if it sets out, among other things, "a matter observed while under a legal duty to report," and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Here, Special Agent Cacioppi testified during his deposition that FBI policy requires that "a 302 [report] be prepared after [a] proffer session[]." (Kratenstein Decl., Ex. C at 21:19-22.) The 302 Report, therefore, sets out matters Special Agent Cacioppi "observed while under a legal duty to report" within the meaning of Fed. R. Evid. 803(8). Regarding the trustworthiness of the report, the Defendants argue that the 302 Report is untrustworthy because Madoff's deposition testimony contradicts his proffer statements. The Court finds this argument unpersuasive. The statements memorialized in the

302 Report were made by Madoff during a voluntary proffer session at the very beginning of the Government's criminal investigation.  Additionally, as Special Agent Cacioppi noted during his deposition, Madoff was expressly told that lying during the proffer session was "a crime unto itself." (Kratenstein Decl., Ex. C at 20:15-16.)  The Court concludes that the Defendants have failed to establish that Madoff's later-in-time deposition testimony fatally undermines the trustworthiness of the 302 Report.  See Bradford Trust Co., 805 F.2d at 54 ("To exclude evidence which technically falls under 803(8)(C) there must be an affirmative showing of untrustworthiness . . .").  The 302 Report, therefore, is admissible at trial as a public record under Fed. R. Evid. 803(8).

As for the second level of hearsay, the Trustee argues that Madoff's proffer statements memorialized in the 302 Report and Special Agent Cacioppi's testimony are admissible as statements against interest of an unavailable declarant under Fed. R. Evid. 804(b)(3).  In a civil case, Rule 804(b)(3)(A) permits a hearsay statement to be admitted if: (i) the declarant is unavailable as a witness; and (ii) the statement is "so contrary to the declarant's proprietary or pecuniary interest or has so great a tendency to . . . expose the declarant to civil or criminal liability" that "a reasonable person in the declarant's position

would have made the statement only if the person believed it to be true." Fed. R. Evid. 804(b)(3)(A).  The rationale behind this exception is "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." Williamson v. United States, 512 U.S. 594, 599 (1994).

    Here, there is little doubt that Madoff's proffer statements satisfy the two requirements of Rule 804(b)(3)(A). First, Madoff died on April 14, 2021, and is, therefore, unavailable within the meaning of Rule 804(b)(3)(A).  Second, Madoff's proffer statements concerning the scope and duration of his fraudulent activity unquestionably exposed him to significant criminal liability.  The Defendants' only argument against the application of Rule 804(b)(3) is that the proffer statements are not "supported by corroborating circumstances [that] clearly indicate the trustworthiness of the [statements] as required by [Fed. R. Evid.] 804(b)(3)."  (Reply Mem. of L. at 4.)  The "corroborating circumstances" requirement, however, is only applicable if the statement is "offered in a criminal case."  Fed. R. Evid. 804(b)(3)(B); see also Annunziata v. City of New York, No. 06 Civ. 7637 (SAS), 2008 WL 2229903, at *9 (S.D.N.Y. May 28, 2008) ("The corroboration requirement appears to apply only in criminal proceedings . . ."). Accordingly, the

Court concludes that Madoff's proffer statements memorialized in the 302 Report and Special Agent Cacioppi's testimony are admissible under Rule 804(b)(3)(A).

Because the 302 Report and Madoff's proffer statements are independently admissible under separate exceptions to the rule against hearsay, the Defendant's Motion in limine (ECF No. 41) is DENIED.  The Clerk of Court is respectfully directed to terminate the motion pending at docket number 41.

**SO ORDERED.**

Dated:   New York, New York
         December 21, 2021

                                        _____
                                        John F. Keenan
                                        United States District Judge